## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MARK S. BOWMAN,** | : | **Civil No. 1:23-cv-00837** |
| | : | |
| **Plaintiff,** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **v.** | : | |
| | : | |
| **CAROLYN COLVIN,** | : | |
| **Acting Commissioner of Social Security[1],** | : | |
| | : | |
| **Defendant.** | : | |

## MEMORANDUM OPINION

### I.    Introduction

One of the bedrock tenets of Social Security disability law is the concept that "ALJs have   a duty to develop a   full   and   fair record in social security cases." Ventura v. Shalala, 55 F.3d 900, 902 (3d Cir. 1995). As part of this duty, "an ALJ must  secure  relevant  information  regarding  a  claimant's  entitlement to social security benefits." Id. The instant case aptly illustrates the importance of this basic notion of fairness.

Mark Bowman, a worker of advanced age under the Social Security guidelines, filed an application for disability benefits under Title II of the Social

---

[1] Carolyn Colvin is currently serving as the Acting Commissioner of Social Security on July 9, 2021. Accordingly, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure  and  42  U.S.C.  §  405(g)  Kilolo  Kijakazi  is  substituted  for  Andrew Saul as the defendant in this suit.

Security Act on September 9, 2017. Following this application, Bowman's disability claim has been repeatedly denied and remanded, with this being the third ALJ decision in his case and the second decision to reach this Court. The recurring issue in these appeals has been the ALJ's treatment of Bowman's mental impairments of adjustment disorder with anxiety and depression, which the ALJ has repeatedly found to be non-severe, but nonetheless cause him mild limitations in each of four delineated areas of mental functioning, including understanding, remembering, or applying information, interacting with others, concentrating, persisting or maintaining pace, and adapting or managing oneself. Indeed, in the ALJ's most recent decision, which is challenged in the plaintiff's complaint, despite the ALJ's conclusion that these non-severe mental disorders caused Bowman mild limitations in these areas of functioning, the ALJ included no mental limitations in Bowman's residual functional capacity and concluded he was capable of performing his past skilled work as a Sales Marketing Manager.

In concluding that this close case should, again, be remanded for further consideration of how these mild limitations in mental functioning affect Bowman's ability to perform this skilled work, we are cognizant that, when we are called upon to assess whether an ALJ has sufficiently articulated a rationale for the mental and emotional components of an RFC, we have recently been instructed that this aspect of an RFC is sufficient "as long as the ALJ offers a 'valid explanation'" for the

mental and emotional limitations imposed upon a worker, <u>Hess v. Comm'r Soc. Sec.,</u> 931 F.3d 198, 211 (3d Cir. 2019). Nonetheless, the ALJ's decision in this case is based upon a paucity of evidence regarding precisely what limitations, if any, Bowman's mild functional limitations would present. And the ALJ's finding that he was capable of performing his past skilled work is an outcome determinative issue for an individual of advanced age like Bowman. Thus, we err on the side of completing the record, especially in light of the suggestion by the Appeals Council that the record need to be augmented in two different ways, either with a consultative examination or vocational expert testimony, which the ALJ did not obtain before issuing this decision which mirrors his previously remanded decision. Accordingly, we find the ALJ's decision is not supported by substantial evidence and the Commissioner's final decision will be vacated and remanded for further consideration.

## II.    <u>Statement of Facts and of the Case</u>

On September 29, 2017, Mark Bowman protectively filed under Title II for a period of disability and disability insurance benefits, alleging disability beginning January 6, 2017 due to an array of physical and emotional impairments including degenerative disc/facet disease, deep vein thrombosis, pulmonary embolism, sleep apnea, depression, and anxiety. (Tr. 138-39). He was 55 years old at the time of the alleged onset of his disability, making him an individual of advanced age under the

Social Security regulations at all times during his application process. (Tr. 138). On the date of the ALJ's decision, Bowman had past relevant work experience as a Sales Marketing Manager and a Sales Representative, both classified as skilled work requiring sedentary to light exertion. (Tr. 1020-21).

Bowman's appeal challenges only the ALJ's consideration of his mental impairments of adjustment disorder with depression and anxiety. With respect to these alleged impairments, the clinical record is quite sparce. His clinical records note a diagnosis of depression as early as 2016, but his mental status examination notes from his medical appointments were consistently unremarkable, showing normal mood and affect, normal speech, memory, and reasoning. (Tr. 448, 481, 685, 808, 813, 826, 907, 923, 1322, 1325, 1330, 1334, 1389, 1414, 1447, 1468, 1473, 1569, 1572,1576). Throughout the relevant period he was being treated for his depression and anxiety by his primary care provider and was treating his symptoms with the prescription medication including Cymbalta and later Seroquel. (Tr. 688-732, 875-925, 1408-1485).

The only medical opinion evidence of record with regard to Bowman's mental impairments is a December 2017 opinion by state agency consulting psychologist, Frank M. Mrykalo, Ed.D. (Tr. 142-43). Dr. Mrykalo opined that Bowman's mental impairments caused him mild limitations in the four areas of mental functioning or "paragraph B" criteria, including understanding, remembering, or applying

information, interacting with others, concentrating, persisting, or maintaining pace, adapting or managing oneself. (Tr. 142). Nonetheless, Dr. Mrykalo opined that Bowman's impairments were not severe, citing his fairly functional activities of daily living and no history of inpatient or outpatient psychiatric treatment. (Id.)

However, Bowman highlights the clinical record following the opinion of Dr. Mrykalo, arguing that there is evidence that his psychological conditions worsened following Dr. Mrykalo's evaluation. For example, he emphasizes his June 2018 anxiety diagnosis, (Tr. 714), and a positive depression screening in July 2018 in which he reported to his primary care physician feeling down, depressed, or hopeless, trouble falling asleep or staying asleep or sleeping too much, feeling tired or having little energy, feeling bad about himself, trouble concentrating, and moving or speaking slowly. (Tr. 720). He reported these symptoms made it somewhat difficult to do work, take care of things at home, or get along with other people. (Id.) A depression screening a few weeks later was negative; although he reported similar symptoms several days over the previous two weeks, he noted these symptoms did not cause him any difficulty in functioning at work or home. (Tr. 894). However in February 2021, Bowman's primary care physician noted:

> He's still struggling with depression. Usually when he's sitting around at night he gets worked up. He hasn't been working for 3 years. Upsets him that he doesn't have any income. States every day he's down on himself. It is hard. There are times he wants to think about suicide but knows that would make things worse. Feels the last 3 years have been

> a constant fight. He does have a hard time getting to sleep. Can't lay flat
> in the bed. Takes Amitriptyline for sleep.

(Tr. 1435). His physician noted that they had increased his Cymbalta dosage which had not helped so Seroquel was added to augment his SSRI. (Tr. 1437). He was diagnosed with moderate, recurrent, major depressive disorder. (Id.)

Despite the apparent worsening of his depression symptoms throughout the relevant period, Bowman and his wife completed function reports which demonstrated that he was able to perform activities of daily living, despite having some limitations in his ability to concentrate and handle stress. Bowman's December 2017 function report stated that he was able to attend to his personal care without reminders, prepare small meals, help with light cleaning, mow, small household chores, and that he cared for his wife who has MS as much as possible. (Tr. 350-57). He also reported driving, shopping for groceries, paying bills and handling money, spending time with family, though he did report postural limitations due to pain. (Id.) Nonetheless, he did express some limitations in his ability to handle stress and follow written and spoken instructions. (Tr. 356). Bowman's wife, Cindy, also completed a third-party function report which reflected similar abilities and activities of daily living, but noted he had trouble with paperwork and concentration and difficulties sleeping. (Tr. 360-67).

Against the backdrop of this evidence, Bowman's disability claim has been subject to two previous unfavorable ALJ decisions which were both remanded. The

hearing and subsequent unfavorable decision which is the subject of the instant complaint came on the heels of a voluntary remand by the Commissioner, citing insufficient articulation of the mental RFC assessment in the ALJ's 2020 unfavorable decisions. Specifically, the Commissioner stated:

> On remand, the administrative law judge (ALJ) will further evaluate the claimant's mental residual functional capacity, fully explaining how the assessed limitations account for claimant's "B" Criteria domain findings; if warranted, obtain supplemental vocational evidence; offer a new hearing; complete the administrative record; and issue a new decision.

(Tr. 1080). This mandate was also affirmed by the Social Security Appeals Council, which instructed in a May 2022 order:

> The ALJ does not adequately explain why the claimant's non-severe impairment of adjustment disorder with anxiety does not result any mental functional limitations, despite causing mild limitations in every domain (Finding 3 and Decision, pages 9-11). Specifically, the ALJ found that the claimant's adjustment disorder with anxiety resulted in mild limitations in the domains of remembering or applying information; interacting with others; concentration, persistence, or pace; and adapting or managing oneself (Decision, pages 9-11). For example, the ALJ acknowledged that the claimant reported difficulty with concentration, task completion, sustained attention, completing tasks, following instructions, and managing stress (Decision, page 10). In particular, it is unclear how the claimant's mild limitation in concentration, persistence, or pace is consistent with the ALJ's finding that the claimant can perform skilled past relevant work as a sales marketing manager (Director of Research & Development) and as a sales representative. These positions have a specific vocational profile of 8 and 6, respectively. The residual functional capacity does not contain any mental limitations, and the ALJ does not explain the absence of mental limitations aside from generally noting claimant's "reported activities of daily living" and mental status examination findings (Decision, page 18). Moreover, this error is not harmless as the

claimant is an individual of advanced age with a light residual functional capacity, and as such, would be disabled were he to be limited to unskilled work pursuant to Medical-Vocational Grid Rule 202.02. Accordingly, further consideration of the claimant's residual functional capacity is required.

Upon remand the ALJ will:

● Give further consideration to the claimant's maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations (20 CFR 404.1545 and Social Security Ruling 85-16 and 96-8p). The decision should adequately explain how the mental residual functional capacity accommodates the claimant's mild limitation in concentration, persistence, or pace.

● If warranted by the expanded record, obtain evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base (Social Security Ruling 83-14). The hypothetical questions should reflect the specific capacity/limitations established by the record as a whole. The ALJ will ask the vocational expert to identify examples of appropriate jobs and to state the incidence of such jobs in the national economy (20 CFR 404.1566). Further, before relying on the vocational expert evidence the ALJ will identify and resolve any conflicts between the occupational evidence provided by the vocational expert and information in the Dictionary of Occupational Titles (DOT) and its companion publication, the Selected Characteristics of Occupations (Social Security Ruling 00-4p).

(Tr. 1089-90).

Despite this explicit mandate from the Appeals Council, the ALJ conducted only a short remand hearing on September 15, 2022. (Tr. 1031-37). Bowman and a vocational expert (VE) were present at the remand hearing, but the ALJ asked the vocational expert only a single, general question regarding whether an individual limited to simple, routing, or repetitive tasks could use any transferrable skills from

semi-skilled or skilled past work to which the VE answered, no. (Tr. 1035-36). Bowman's attorney then confirmed in a follow-up question that a limitation to simple routine tasks would be considered unskilled work. (Tr. 1036). This exchange seemingly evidenced only that, if the ALJ had limited Bowman to simple, routine work to accommodate his mild limitations in mental functioning he would be unable to perform his past skilled work.

Following this hearing, on September 27, 2022, the ALJ, without requesting any additional medical opinions or evaluations, issued a decision denying Bowman's application for benefits. (Tr. 1000-22). In the most recent ALJ decision, the ALJ's Step 2 Paragraph B analysis mirrored that of the previously remanded decision, stating that Bowman had mild limitations in all four broad functional areas of mental functioning, or "paragraph B" criteria, but that because there were no more than mild limitations in these areas, these impairments were considered nonsevere. (Tr. 1009-11). The ALJ then acknowledged that the limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment and that the RFC assessment reflected the degree of limitation the ALJ found in the "paragraph B" mental function analysis. The ALJ then fashioned an RFC which again included no limitations for Bowman's mild impairments in mental functioning.

On this score, the ALJ's articulation of why no limitations were required to account for Bowman's mild limitations in all broad functional areas of mental

functioning was nearly identical to that of his previous decision, which the Commissioner and Appeals Council found to be deficient. No additional evidence was collected, beyond the single question asked of the VE at the remand hearing, and the ALJ again based his decision that no limitation in Bowman's mental abilities was necessary upon his activities of daily living, the lack of treatment with a mental health provider, generally normal mental status examination findings, and the December 2017 opinion of State agency psychological consultant Frank Mrykalo, Ed.D. (Tr. 1018). By way of any additional articulation beyond what was previously rejected by the appeals council, the ALJ noted simply:

> In terms of the lack of mental limitations in the residual functional capacity, the claimant's mild "paragraph B" limitations are so slight that they do not cause any measurable loss of function in the mental abilities to understand, remember or carry out instructions, to make work related decisions, or to respond appropriately to supervisors, coworkers, usual work situations, changes in work setting, or work pressures in a work setting. The fact remains that the claimant did not attend treatment with a mental health provider during the relevant time period, he had generally normal mental status examination findings on a consistent basis, and he reported that he engaged in a variety of activities of daily living during the relevant time period. Additionally, the opinion provided by the State agency psychological consultant did not warrant any mental limitations. Thus, the following residual functional capacity assessment considered the mental impairments but does not reflect any limitation in mental abilities.

(Tr. 1018).

The ALJ then found that Bowman was capable of performing his past relevant work as a Sales Marketing Manager, a skilled position with an SVP of 8, and Sales

Representative, a skilled position with an SVP of 6. (Tr. 1020). The ALJ concluded a vocational expert had testified that an individual with Bowman's same RFC, which excluded any limitations in mental functioning, would be able to perform his past relevant work. However, as noted, the ALJ did not question the VE about what, if any, effects mild limitations in maintaining concentration and pace would have on his ability to perform this skilled work.

This appeal followed. (Doc. 1). On appeal, Bowman argues the ALJ erred at Step 2 in finding his mental impairments were non-severe and that the RFC was not supported by substantial evidence because the ALJ failed to fully develop the record as to his mental impairments. As discussed in greater detail below, having considered the arguments of counsel and carefully reviewed the record, we conclude that despite the deferential standard of review we employ, considering the administrative history of this case which reveals further development of the record was necessary, and the ALJ's failure to elicit additional evidence regarding Bowman's mental abilities, the ALJ's decision is not supported by substantial evidence. Accordingly, we will remand this case for further consideration by the Commissioner.

## III.   Discussion

### A.   Substantial Evidence Review – the Role of this Court

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record.  See 42 U.S.C. §405(g); Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200 (3d Cir. 2008); Ficca v. Astrue, 901 F.Supp.2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. Richardson v. Perales, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is

supported by substantial evidence the court must scrutinize the record as a whole."

Leslie v. Barnhart, 304 F. Supp.2d 623, 627 (M.D. Pa. 2003).

The Supreme Court has underscored for us the limited scope of our review in this field, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. T-Mobile South, LLC v. Roswell, 574 U.S. ——, ——, 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." Ibid.; see, e.g., Perales, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison, 305 U.S. at 229, 59 S.Ct. 206. See Dickinson v. Zurko, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019).

The question before this Court, therefore, is not whether the claimant is disabled, but rather whether the Commissioner's finding that [he] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. See Arnold v. Colvin, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence") (alterations omitted); Burton v. Schweiker, 512

F.Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts"); <u>see also</u> <u>Wright v. Sullivan</u>, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); <u>Ficca</u>, 901 F.Supp.2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

Several fundamental legal propositions flow from this deferential standard of review. First, when conducting this review "we are mindful that we must not substitute our own judgment for that of the fact finder." <u>Zirnsak v. Colvin</u>, 777 F.3d 607, 611 (3d Cir. 2014) (citing <u>Rutherford v. Barnhart</u>, 399 F.3d 546, 552 (3d Cir. 2005)). Thus, we are enjoined to refrain from trying to re-weigh the evidence. Rather our task is to simply determine whether substantial evidence supported the ALJ's findings. However, we must also ascertain whether the ALJ's decision meets the burden of articulation demanded by the courts to enable informed judicial review. Simply put, "this Court requires the ALJ to set forth the reasons for his decision." <u>Burnett v. Comm'r of Soc. Sec. Admin.</u>, 220 F.3d 112, 119 (3d Cir. 2000). As the Court of Appeals has noted on this score:

> In <u>Burnett</u>, we held that an ALJ must clearly set forth the reasons for his decision. 220 F.3d at 119. Conclusory statements . . . are insufficient. The ALJ must provide a "discussion of the evidence" and an "explanation of reasoning" for his conclusion sufficient to enable meaningful judicial review. <u>Id</u>. at 120; <u>see Jones v. Barnhart</u>, 364 F.3d 501, 505 & n. 3 (3d Cir.2004). The ALJ, of course, need not employ particular "magic" words: "<u>Burnett</u> does not require the ALJ to use

14

particular language or adhere to a particular format in conducting his analysis." <u>Jones</u>, 364 F.3d at 505.

<u>Diaz v. Comm'r of Soc. Sec.</u>, 577 F.3d 500, 504 (3d Cir. 2009).

Thus, in practice ours is a twofold task. We must evaluate the substance of the ALJ's decision under a deferential standard of review, but we must also give that decision careful scrutiny to ensure that the rationale for the ALJ's actions is sufficiently articulated to permit meaningful judicial review.

### B.    Initial Burdens of Proof, Persuasion, and Articulation for the ALJ

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A); 42 U.S.C. §1382c(a)(3)(A); <u>see also</u> 20 C.F.R. §§404.1505(a), 416.905(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. §423(d)(2)(A); 42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. §§404.1505(a), 416.905(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or he contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or he was last insured. 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. §§404.1520(a), 416.920(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).

Between Steps 3 and 4, the ALJ must also assess a claimant's residual functional capacity (RFC). RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." Burnett, 220 F.3d at 121 (citations omitted); see also 20 C.F.R. §§404.1520(e), 404.1545(a)(1), 416.920(e), 416.945(a)(1). In making this assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. §§404.1545(a)(2), 416.945(a)(2).

Once the ALJ has made this determination, our review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence. Burns v. Barnhart, 312 F.3d 113,

129 (3d Cir. 2002); see also Rathbun v. Berryhill, No. 3:17-CV-00301, 2018 WL 1514383, at *6 (M.D. Pa. Mar. 12, 2018), report and recommendation adopted, No. 3:17-CV-301, 2018 WL 1479366 (M.D. Pa. Mar. 27, 2018); Metzger v. Berryhill, No. 3:16-CV-1929, 2017 WL 1483328, at *5 (M.D. Pa. Mar. 29, 2017), report and recommendation adopted sub nom. Metzgar v. Colvin, No. 3:16-CV-1929, 2017 WL 1479426 (M.D. Pa. Apr. 21, 2017)..

At Steps 1 through 4, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work. Mason, 994 F.2d at 1064. Once this burden has been met by the claimant, it shifts to the Commissioner at Step 5 to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC.  20 C.F.R. §§404.1512(f), 416.912(f); Mason, 994 F.2d at 1064.

The ALJ's disability determination must meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate

which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Id. at 706-707. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." Schaudeck v. Comm'r of Soc. Sec., 181 F. 3d 429, 433 (3d Cir. 1999).

### C.    This Case Will be Remanded for Further Consideration.

At the outset, we acknowledge that this is a close case. On one hand, it is well settled that "the ALJ's consideration of the individual's non-severe impairments does not amount to a requirement that the ALJ must include limitations in the RFC associated with mild impairments." Weidner v. Kijakazi, No. CV 20-1250-MN, 2022 WL 610702, at *9 (D. Del. Feb. 1, 2022), report and recommendation adopted, No. CV201250MNSRF, 2022 WL 610678 (D. Del. Feb. 16, 2022) (citing Smith v. Comm'r of Soc. Sec., 2016 WL 3912850, at *9 (D.N.J. July 19, 2016)). Moreover, under the Third Circuit's holding in Hess that an ALJ's mental RFC assessment should be upheld "as long as the ALJ offers a 'valid explanation,'" for that assessment. Hess v. Comm'r Soc. Sec., 931 F.3d 198, 211 (3d Cir. 2019). As previously noted, an ALJ offers a valid explanation of a mental RFC when the ALJ highlights factors such as "mental status examinations and reports that revealed that [the claimant] could function effectively; opinion evidence showing that [the claimant] could do simple work; and [the claimant]'s activities of daily living, . . .

18

. " Hess v. Comm'r Soc. Sec., 931 F.3d 198, 214 (3d Cir. 2019). See also Shaffer v. Colvin, 2014 WL 4925067, at *5 (W.D. Pa. Sept. 30, 2014) ("It is clear from the record that the ALJ adequately considered all of the relevant medical evidence, as well as plaintiff's reported activities, in assessing plaintiff's residual functional capacity, and that he incorporated into his finding all of the limitations that reasonably could be supported by the medical and other relevant evidence."); McCafferty v. Astrue, 2008 WL 1869282, at *4 (E.D. Pa. Apr. 25, 2008) (finding that the requirements of SSR 96-8p were satisfied by ALJ's narrative discussion of the claimant's functional limitations in the context of the objective medical evidence, doctors' notes and opinions, the claimant's activities of daily living, and the claimant's subjective complaints).

Thus, we have, in the past, affirmed unfavorable decisions which noted mild limitations in all areas of mental functioning where an ALJ adequately articulated the reasons why no mental limitations were necessary in the RFC. Nonetheless, as we have noted, one of the grounds Bowman raises on appeal is the ALJ's failure to fully develop the record with respect to his mental limitations. He contends that a consultative examination was necessary to clarify the extent of Bowman's mental limitations. The plaintiff cites to the sparse clinical record and the fact that the only medical opinion evidence with regard to his mental functioning was conducted in

2017, prior to his anxiety diagnosis and before the noted worsening of his depression symptoms.

Indeed, it is true that administrative proceedings are distinct from adversarial judicial proceedings, and thus in some cases the ALJ may have an obligation to ensure that the administrative record is adequately developed, specifically where the claimant has not done so. Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir.1995). This is true because "[a]lthough the burden is upon the claimant to prove his disability, due regard for the beneficent purposes of the legislation requires that a more tolerant standard be used in this administrative proceeding than is applicable in a typical suit in a court of record where the adversary system prevails." Id. (citing Hess v. Sec'y of Health, Ed. & Welfare, 497 F.2d 837, 840 (3d Cir.1974)). However, the ALJ is not required to search out all relevant evidence which might be available, "since that would in effect shift the burden of proof to the government." Id. at 840 (citing Easley v. Finch, 431 F.2d 1351, 1353 (4th Cir.1970)).

The regulations in this field thus require the ALJ to inquire fully into the matters at issue and admit testimony of witnesses and any documents which are relevant and material. 20 C.F.R. § 410.640. If the ALJ believes that there is relevant and material evidence available which has not been presented at the hearing, the ALJ may take the necessary steps to ensure that evidence is entered into the record. Id. One of the tools available to an ALJ in this setting is a consultative examination.

Chalfant v. Comm'r of Soc. Sec., No. 4:20-CV-1719, 2022 WL 838118, at *5 (M.D.

Pa. Mar. 21, 2022). On this score:

> The decision to order a consultative examination is within the sound
> discretion of the ALJ unless the claimant establishes that such an
> examination is necessary to enable the ALJ to make the disability
> decision." Miller v. Berryhill, No. 17-cv-1452, 2019 WL 3776662, at
> *18 (M.D. Pa. Aug. 12, 2019) (citing Thompson v. Halter, 45 F. App'x.
> 146, 149 (3d Cir. 2002)). "[W]here the medical evidence in the record
> is inconclusive, a consultative examination is often required for proper
> resolution of a disability claim." Brown v. Saul, No. 18-cv-01619, 2020
> WL 6731732, at *10 (M.D. Pa. Oct. 23, 2020) (report and
> recommendation adopted by 2020 WL 6729164 (M.D. Pa. Nov. 16,
> 2020)) (citing Hawkins v. Chater, 113 F.3d 1162, 1166 (10th Cir.
> 1997)).

Id. at *5. However, when it is given that a claimant has a clear history of depressive

symptoms, an "ALJ fail[s] in her duty to develop the record when she d[oes] not

order a consultative examination." Id. at *6.

Of particular relevance here is the duty of the ALJ "to develop the record

where there is a suggestion of mental impairment by inquiring into the present status

of impairment and its possible effects on the claimant's ability to work," specifically

where, "none of the doctors who diagnosed [the claimant] with mental impairments

evaluated its effects on [his] ability to work." Plummer v. Apfel, 186 F.3d 422, 434

(3d Cir. 1999) (citing Stambaugh on Behalf of Stambaugh v. Sullivan, 929 F.2d 292,

295 (7th Cir.1991); Hill v. Sullivan, 924 F.2d 972, 974 (10th Cir.1991) (requiring

psychiatric analysis because of a psychiatrist's diagnosis of "[c]hronic fatigue and

lack of energy; this possibly could be more likely to be chronic mental depression in

this patient" in the record)). As the Appeals Council suggested, another tool at the disposal of the ALJ is the elicitation of testimony from a vocational expert as to how a claimant's limitations would affect his ability to perform work-related activity.

In the instant case, we find that the ALJ's failed to adequately develop the record. While we acknowledge that ALJ's decision whether to order a consultative examination is discretionary, even if the ALJ was correct that no examination was needed, there was still an indication by the Appeals Council that additional vocational expert testimony regarding how Bowman's mild limitations, specifically in the areas of maintaining concentration and pace, would affect his ability to perform his past skilled work. In this most recent decision, although the ALJ explained, generally, how these mild limitations were cast against Bowman's activities of daily living and the single medical opinion regarding his impairments, there is still no additional reliable evidence to explain how these mild limitations might affect his ability to perform this past skill work. For an individual of advanced age, this can be outcome determinative. Thus, in our view, the failure of the ALJ to question the vocational expert, who was available at the hearing, about Bowman's functional abilities was error. Moreover, the ALJ failed to adequately explain why no additional evidence was necessary, despite the clear mandate from the Appeals Council to do so.

Given the dearth of evidence regarding the effect of Bowman's mild functional limitations on his ability to perform his past skilled work, and the importance of this information where the ALJ's conclusion that Bowman was capable of his past skilled work is outcome determinative, we cannot conclude that the ALJ's decision not to elicit vocational expert testimony or order a consultative examination is supported by substantial evidence in the record. Accordingly, we will remand this case to the ALJ for further evaluation, development, and assessment of the medical record with regard to Bowman's mental impairments. Finally, we note that nothing in this Memorandum Opinion should be deemed as expressing a judgment on what the ultimate outcome of any reassessment of this evidence should be. Rather, the task should remain the duty and province of the ALJ on remand.

### III.    <u>Conclusion</u>

Accordingly, given that we find the ALJ's determination is not supported by substantial evidence, the final decision of the Commissioner will be VACATED, and this case will be REMANDED for further consideration by the Commissioner.

An appropriate order follows.

/s/ *Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

DATED: January 28, 2025

23